UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SETH ANTHONY JOHNSON,<br><br>Defendant. | Case No. 1:18-cr-00214-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Seth Johnson's Motion for Dissolution of Writs of Attachment and Garnishment (the "Motion"). Dkt. 106. The Court held oral argument on January 31, 2020, and took the Motion under advisement. The Court allowed supplemental briefing on the issues which both parties timely filed. Upon review, and for the reasons outlined below, the Court finds good cause to GRANT the motion. However, in a separate Order, the Court also finds good cause to freeze Johnson's assets at this time.

## II. BACKGROUND

On July 7, 2018, the United States filed an indictment against Johnson. Dkt. 1. On October 18, 2019—after a three-day trial—a jury returned a guilty verdict on all three counts set forth in the indictment. Dkt. 91.

On December 31, 2019, the United States filed an Ex Parte Application for Pre-Judgment Writs of Attachment and Garnishment. Dkt. 99. In its application, the

Government explained that Johnson had recently assigned a power of attorney to one of his friends—Michael Dye—and instructed him (Dye) to gather his (Johnson's) personal assets and sell them. Dkt. 99, at 4.

Based on this behavior, the United States believed that Johnson was trying to "assign, dispose, remove, conceal, ill-treat, waste, or destroy property with the effect of hindering, delaying, or defrauding the United States" and/or was in the process of "convert[ing] the debtor's property into money, securities, or evidence of debt in a manner prejudicial to the United States with the effect of hindering, delaying, or defrauding the United States." 28 U.S.C. § 3101(b)(1)(B)-(C).

Finding good cause, the Court granted the ex parte motion. Dkt. 100. Specifically, the Court authorized the United States Marshal's service to seize a 2004 Ford Mustang, a 2003 Oldsmobile Alero, an RV, and approximately $800 in cash from Dye. Dkt. 100, at 1-2. The United States Marshal's service seized the vehicle titles for the Mustang and the RV, but did not physical seize or acquire those vehicles or any other items belonging to Johnson.

The Clerk of the Court then—pursuant to 28 U.S.C. §3101—sent Johnson notice of the action it had taken and notified him that should he wish to object, he could do so in writing. Dkt. 101.

Johnson timely objected and exercised his right to have a hearing on the validity of the writs. Dkt. 106.

### III. ANALYSIS

Before the Court discusses Johnson's arguments in favor of dissolution, it must

address certain concerns it raised at the hearing: (1) the applicability of the Federal Debt Collection Procedures Act ("FDCPA") in criminal cases; (2) the timing of FDCPA remedies—whether prejudgment or postjudgment; and (3) whether a separate civil action is necessary. The Court can dispose of the first and third questions in relatively short order. The second question, however, is more nuanced.

**A. The FDCPA's applicability to criminal cases.**

The FDCPA—28 U.S.C. §§ 3001–3308[1]—outlines that it is the "exclusive *civil* procedure for the United States (1) to recover a judgment on a debt; or (2) to obtain, before judgment on a claim for a debt, a remedy in connection with such claim." 28 U.S.C. § 3001(a) (emphasis added). Debt in this context can include restitution orders. 28 U.S.C. § 3002(3)(B).

"Judgment" under the FDCPA means "a judgment, order, or decree entered in favor of the United States in a court and arising from a civil or criminal proceeding regarding a debt." 28 U.S.C. § 3002(8).

"Prejudgment remedy" in turn, means "the remedy of attachment, receivership, garnishment, or sequestration authorized by this chapter to be granted before judgment on the merits of a claim for a debt." 28 U.S.C. § 3002(11).

---

[1] Initially, the Government relied on both the FDCPA and the All Writs Act to support its actions in this case. Feeling that its reliance on the FDCPA was sufficient, the Government "with[drew] its reliance on the All Writs Act" in its supplemental brief. Dkt. 115, at 2. Be that as it may, as the Court will explain in the companion order to this memorandum decision and order, the Court will be relying on the All Writs Act to accomplish what it deems to be the necessary and equitable resolution of this controversy.

Thus, upon review, while the statute does not unequivocally state that it applies to criminal cases, the definition of "judgment" clearly indicates that the debt can arise in civil or criminal actions. *See* 28 U.S.C. § 3002(3)(B). Furthermore, as will be discussed shortly, the Ninth Circuit in *United States v. Mays*, 430 F.3d 963 (9th Cir. 2005), found that "the FDCPA's civil enforcement remedies may be used to enforce orders of restitution entered under the [Mandatory Victims Restitution Act]." *Id.* at 965. Thus, the Court finds that the FDCPA can be utilized by the Government in both civil and criminal proceedings.

Additionally, one of the main disputes in *Mays* was whether the United States had to file a separate civil action to collect the debt owed or if it could simply file a motion in the applicable criminal case. The Ninth Circuit held there was an "unbroken line of judicial authority . . . authorizing the United States to enforce judgments of restitution in criminal cases without initiating separate civil actions." *Id.*, at 967. Accordingly, the Court finds that the Government need not initiate a separate civil action to rely on the FDCPA.

That leaves the Court's final question—timing.

**B. Use of FDCPA's remedies: prejudgment and/or postjudgment.**

The Government again cites to *Mayes* and argues that the FDCPA "was enacted 'to give the Justice Department uniform Federal procedures—*prejudgment remedies and postjudgment remedies*—to collect debts owed the United States nationwide.'" *Id.* at 965 (emphasis added) (citing H.R. Rep. No. 103–883, at 81 (1995)).

The Court *does not* dispute that prejudgment remedies are allowed under the FDCPA. However, the Government cannot cite to a single *criminal* case—nor can the

Court identify any—wherein a Court allowed prejudgment remedies *prior to sentencing*.[2]

In every case in which the FDCPA was invoked in criminal proceedings the Government did so *post-sentencing* (i.e. postjudgment) in an attempt to satisfy that existing and formal judgment. Additionally, the available cases the Court can identify wherein the FDCPA was invoked to utilize pre-judgment remedies are all civil proceedings.

Accordingly, after an exhaustive review, the Court cannot say with any degree of certainty that the FDCPA allows the type of prejudgment remedies sought here in criminal cases. To the question of whether the FDCPA applies to criminal cases, the answer is clearly yes. Additionally, the question of whether the FDCPA allows prejudgment remedies must also be answered in the affirmative. However, there is no indication that the two conclusions overlap. While *Mayes* clearly adopts the FDCPA procedures—and outlines that the FDCPA applies in criminal cases, does not need to be associated with a separate civil filing, and includes certain prejudgment remedies—it does not clearly allow for those prejudgment remedies *in criminal cases*.[3] Even in *Mayes*, the Defendant had

---

[2] There is one ancillary case, *United States v. Bradley*, 2006 WL 8429686, at *1 (S.D. Ga. Oct. 4, 2006), wherein the Government used the FDCPA prior to sentencing and judgment to issues writs and appoint a receiver in anticipation of sentencing in order to satisfy an approximately $40 million preliminary forfeiture judgment. While the Government's actions in *Bradley* were pre-sentencing and prejudgment, there was already a preliminary forfeiture judgment in that case which renders it distinguishable from many others. Additionally, the main issue in *Bradley* was that of appointing a receiver. Interestingly, on appeal, the District Court was reversed. *See United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011). Amongst other findings, the Eleventh Circuit determined that the Court should not have appointed a receiver, but simply utilized the provisions within the FDCPA. The Eleventh Circuit noted that because *there was a judgment*, the Government had "all the tools necessary to obtain payment of the [monies owing]" and was authorized to "seize the property via writs of attachment (for tangible property) and garnishment (for intangible property, like a bank account)." *Id.* at 1310.

[3] Thus, the language quoted—that "the FDCPA was enacted 'to give the Justice Department uniform Federal procedures—prejudgment remedies and postjudgment remedies—to collect debts owed the United States nationwide'"—appears to be more generally describing the FDCPA as a whole. *See Mayes*, 430 F.3d

already been sentenced, a judgment (debt) had been entered, and the Government was trying to collect on that existing debt.[4]

All of this uncertainty aside, even assuming arguendo that these provisions do apply, and the Government can use the FDCPA's prejudgment remedies in criminal cases, the Court finds that the Government cannot meet the requisite statutory requirements to justify its writs in the present case.

Pursuant to 28 U.S.C. 3101 "the application under subsection (a) shall include an affidavit establishing with particularity to the court's satisfaction facts supporting the probable validity of the claim for a debt and the right of the United States to recover what is demanded in the application." 28 U.S.C. 3101 (c). Furthermore, the affidavit shall state: "(A) specifically the amount of the debt claimed by the United States and any interest or costs attributable to such debt; (B) one or more of the grounds specified in subsection (b); and (C) the requirements of section 3102(b), 3103(a), 3104(a), or 3105(b), as the case may be." 28 U.S.C. 3101 (c)(2)(A)-(C).

Johnson begins his motion by arguing that the United States' affidavit fails to specify "with particularity" the "probable validity of the claim for a debt and the right of the United States to recover [said debt]." 28 U.S.C. § 3101(c)(1). In addition, because the

---

at 965. And clearly, the *Mayes* court was relying on the "postjudgment" remedies there, as the Government in that case sought to satisfy a debt following judgment.

[4] The Court is not implying prejudgment remedies are *foreclosed* in criminal cases—to be sure, the FDCPA does not forbid prejudgment remedies in criminal cases. Granted, it does not affirmatively sanction them either, but it stands to reason it is possible. That said, without a single case to support this concept or explain the appropriate procedures, the Court is loath to set precedent in this area. Finally, as will be explained in greater detail in the accompanying decision, the Court can fashion an appropriate remedy in this case *without* formally deciding this issue.

affidavit does not include "specifically the amount of the debt claimed by the United States and any interest or costs attributable to such debt," Johnson argues it cannot serve as the basis for the writs. 28 U.S.C. § 3101 (c)(2)(A). The Court agrees, in part, with Johnson.

The Government admits it does not know the exact amount of the debt at this time—nor will it be able to have an exact amount until a restitution hearing is held—it nonetheless arguers that it is certain there will be restitution in an amount of at least $3,000 in this case. Relying on the "probable validity of the claim for a debt" language, the Government contends their affidavit is sufficient. The problem, however, is these are two separate requirements. The probable validity of a debt is one thing; the amount of the debt is something entirely different.

In this case, it is reasonable to assume the Court will impose restitution at the time of sentencing or at a hearing held thereafter. In that regard, the Court finds the Government has met its burden in establishing the "probable validity of the claim for a debt."

This finding, however, does not absolve the Government of specifying the amount of the debt it is claiming in this case.[5]

---

[5] This concept, however, presents a bit of a quagmire as well. While the FDCPA clearly outlines that the Government can obtain a remedy "before judgment on a claim for a debt," it requires that any affidavit supporting an application for prejudgment remedies includes "specifically the amount of the debt claimed by the United States," 28 U.S.C. § 3101 (c)(2)(A). One may wonder how the Government can know "specifically the amount" of any debt "before judgment on a claim for a debt" has even been determined. Without wading into a lengthy discussion and review of civil cases in which such prejudgment remedies were upheld, it appears that the requested amount and the awarded amount need not equal one another. Said differently, the Government is required to "specify" the amount *it "claims" it is owed*. Whether that is greater or less than the amount of the actual judgment or debt is, to some degree, irrelevant. Thus, the Government could claim a debt owing and then upon completion of any hearing, proceeding, or judgment reconcile any discrepancies. In this case, this is, however, one of the problems—the Government has not even speculated at any amount. They have simply listed the "floor" of $3,000. Now, the court is not suggesting that had the government provided a specific number, even at random, it would have granted the

Here, the Government does not state any specific amount, but instead estimates that the Court will award at least $3,000 in restitution. The Government's estimation there will be at least a $3,000 restitution award in this case is based upon the presentence investigation report's findings that under 18 U.S.C. 2259(c)(3), a minimum $3,000 in restitution for victim's losses must be awarded.

Johnson counters that the statutory requirement of at least $3,000 in restitution that is codified in 18 U.S.C. § 2259(c)(3) was established by the Amy, Vicky, and Andy Child Pornography Victim Assistance Act ("AVAA"), which was signed into law on December 7, 2018. In Johnson's estimation, Congress made clear the provisions of this act are not to be applied retroactively: "It is the sense of Congress that individuals who violate this chapter prior to the date of the enactment of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, but who are sentenced after such date, shall be subject to the statutory scheme that was in effect at the time the offenses were committed." 18 U.S.C. § 2259B(d). Because his conduct occurred before the AVAA's enactment, Johnson asserts he is only subject to "the statutory scheme that was in effect at the time the offenses were committed." The Court is not as convinced.

While it is true that "rules will not be construed to have retroactive effect unless their language requires this result," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994), at least one court has recently concluded that "sense of Congress" language was not binding on the Court and an order of restitution under AVAA—even a retroactive one—was

---

application—because, as will be discussed this is not the sole problem with the Government's affidavit—but that doing so *may* have satisfied the "specificity" requirement.

appropriate. *See United States v. Berry*, No. 1:18-CR-00107-AA, 2020 WL 86194, at *2 (D. Or. Jan. 6, 2020) (finding this "'sense of Congress' language is considered legislative dicta and not binding on the Court").

Critically, however, whether the $3,000 floor outlined in AVAA is retroactive or even applicable in this case is, to some degree, irrelevant. Even pre-AVAA, the purpose of 18 U.S.C. § 2259 was to award restitution in cases such as this. Said differently, there is authority outside the AVAA under which the Court could award restitution in this matter. Accordingly, Johnson's assertion there will be no restitution award in this case based on the AVAA's non-retroactive status discounts the fact that the Court can impose restitution under other statutes.

Besides arguing the applicability of the AVAA, the Government proffers similar cases from this district wherein restitution was awarded. While the Government's representations are accurate, there has been no request for restitution in this case. Even if such a request is made, the facts of each case are paramount in considering an appropriate award of restitution. Some awards are small (hundreds or thousands of dollars) and some are large (tens or even hundreds of thousands of dollars), but the Court cannot determine that amount until a request has been made and a hearing held. The Court, therefore, does not rely on past awards to speculate on the possible award in this case.

In sum, while the Government has established the probable validity of a debt, the Court finds the Government has not "to the Court's satisfaction" specified the amount owed.

Finally, the Court mentions one other element of the Government's affidavit it finds

suspect. Under 28 U.S.C. 3101 § (c)(2)(B), the government must include in the affidavit reasonable cause to believe the debtor is about to prevent the United States from recovering its debt by fleeing the jurisdiction, disposing of assets, or evading service of process. 28 U.S.C. § 3101(b).

Here, the Government contends Johnson's communications with Dye prove he is trying to dispose of assets and/or convert assets to money in an effort to prejudice or defraud the United States. Based on the testimony and evidence at the hearing, however, this is not really the case. Or at least, such a conclusion is not certain.

Yes, it is true that Johnson is trying to sell assets at this time. However, it does not appear he is doing so for any nefarious purpose or because of this case. United States Deputy Marshal Pete Thompson testified Johnson has done this—"flipped" vehicles—many times in the past as a way of making money. While the circumstances now (namely Johnson being incarcerated) may explain why Johnson wants to dispose of this property quickly and/or is willing to accept less money than before, that does not necessarily mean he is actively trying to "hinder[], delay[] or defraud[] the United States."

Under the circumstances, the Court finds that the Government has not met its burden under the affidavit requirement as outlined in 28 U.S.C. § 3101 to justify a prejudment remedy such as writs of attachment or garnishment.

### IV. CONCLUSION

The FDCPA allows for prejudgment remedies only in "compelling circumstances." H.R. Rep. No. 736, 101st Cong., 2d Sess. (1990), reprinted in, 1990 U.S.C.C.A.N. 6630, 6635. *See also, N.L.R.B. v. E.D.P. Med. Computer Sys., Inc.*, 6 F.3d 951, 956 (2d Cir.

1993). This is not one of those situations.

And while the Court questions the applicability of the FDCPA's prejudgment remedies *in criminal cases*, even accepting the same, it finds the Government has not met the strict requirements of 28 U.S.C. § 3101. Accordingly, Johnson's Motion must be granted.

## V. ORDER

1. Johnson's Motion for Dissolution of Writs of Attachment and Garnishment (Dkt. 106) is GRANTED. The writs are dissolved.[6]

DATED: February 10, 2020

David C. Nye
Chief U.S. District Court Judge

---

[6] However, as will be explained in the Court's companion decision filed concurrently herewith, the assets in question shall remain "frozen" pending sentencing.