UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    v.<br><br>SETH ANTHONY JOHNSON,<br><br>             Defendant. | Case No. 1:18-cr-00214-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is the Government's request for restitution in this case. Dkt. 121, at 9. The Court held oral argument on April 1, 2021, and took the matter under advisement. Upon review, and for the reasons set forth below, the Court GRANTS the Government's request, and orders restitution in the amount of $15,300.

## II. BACKGROUND

On July 7, 2018, the Government filed an indictment against Johnson. Dkt. 1. On October 18, 2019—after a three-day trial—a jury returned a guilty verdict on all three counts set forth in the indictment. Dkt. 91.

Prior to sentencing, the Government filed an Ex Parte Application for Pre-Judgment Writs of Attachment and Garnishment on December 31, 2019. Dkt. 99. In its application, the Government explained that Johnson had recently assigned a power of attorney to one of his friends—Michael Dye—and instructed him (Dye) to gather his (Johnson's) personal

assets and sell them. Dkt. 99, at 4. The Court granted the application. Dkts. 100, 101. Johnson subsequently filed a motion to dissolve the writs. Dkt. 106. The Court held a hearing and, ultimately, on February 10, 2020, granted Johnson's motion. Dkt. 117. The Court, however, concurrently issued an order freezing Johnson's assets pending sentencing. Dkt. 118. As part of the freeze order, the Court ordered Johnson, pursuant to the All Writs Act, not to dispose of any asset greater than $100 without Court permission. *Id*. at 5. The Court also instructed the United States Marshals Service to retain the two vehicle titles already in its possession. *Id.*

On February 21, 2020, the Court sentenced Johnson to 720 months imprisonment. Dkts. 125, 126. At that time, the Court took the matter of restitution and a fine under advisement pending a hearing on the same. Dkt. 125, at 1.

In preparation for the restitution hearing, the Government submitted its request. Dkt. 142. Therein, the Government outlines that the restitution in this case is limited to losses (past and future) incurred by the eight-year-old victim in this case, A.B. The Government asks the Court for an order in the amount of $15,300.

Johnson did not take the opportunity to respond to the Government's request prior to the hearing.

The Court held a restitution hearing on April 1, 2021. Dkt. 149. The Court heard evidence and testimony and requested that the parties file closing briefs. The parties obliged (Dkts. 152, 153, 156, 157) and the matter is now ripe for adjudication.

///

///

### III. LEGAL STANDARD

Section 2259 provides for mandatory restitution for victims of certain child exploitation offenses. 18 U.S.C. § 2259. Restitution requires that the defendant pay the full amount of the victim's losses as determined by the court, including:

- medical services relating to physical, psychiatric, or psychological care;

- physical and occupational therapy or rehabilitation;

- necessary transportation, temporary housing, and child care expenses;

- lost income;

- attorneys' fees, as well as other costs incurred, and;

- any other losses suffered by the victim as a proximate result of the offense.

*See* 18 U.S.C. § 2259(b). Such an order of restitution shall be issued and enforced in accordance with 18 U.S.C. § 3664. *Id.*

"[A] court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general [aggregate] losses." *Paroline v. United States*, 572 U.S. 434, 458–59 (2014). The Court noted that proximate causation will not be at issue when the losses were of the type that one should expect a child-pornography victim to suffer—they are both foreseeable results of and within the scope of the risk created by child pornography production, distribution, and possession. *Id*. at 449–50. *Paroline* interpreted the causation standard with the paramount goal of victims receiving some restitution in each case.

> [C]ourts can only do their best to apply the statute as written in a workable manner, faithful to the competing principles at stake: that victims should be

compensated and that defendants should be held to account for the impact of their conduct on those victims, but also that defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others.

*Id.* at 462. The Government must prove the amount of the victim's losses by a "preponderance of the evidence," and the Court shall resolve any dispute as to the proper amount of restitution by the same standard. 18 U.S.C. § 3664(e).

## IV. DISCUSSION

Before discussing the substitutive arguments regarding restitution, the Court must address whether or not it has the legal authority to even order restitution under the circumstances of this case. Johnson argues that the Court lacks authority to order restitution because more than 90 days have elapsed since the sentencing hearing. After analyzing this threshold issue, the Court will discuss the substance of the restitution request.

### A. Authority to Order Restitution

Pursuant to 18 U.S.C. § 3664, the Court need not make a final determination as to restitution at sentencing but may defer ruling until a later time:

If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing.

18 U.S.C. § 3664(d)(5). As noted above, the Court sentenced Johnson on February 19, 2020. Prior to sentencing, the Government informed the Court that it had not calculated the final amount of restitution and, pursuant to 18 U.S.C. § 3664(d)(5), requested that the Court make any such determination at a later date. Dkt. 121, at 9–10. Accordingly, the Court did not order a specific amount of restitution at the sentencing hearing.

With the onset of COVID-19 shortly thereafter, as well as various continuances, the Court did not have opportunity to hold a restitution hearing until over one year after the sentencing hearing had occurred.[1]

In light of this lengthy delay, Johnson contends that the Court lacked jurisdiction to hold the hearing. The Government pointed out that under Supreme Court precedent, the Court is not deprived of jurisdiction so long as it actually orders restitution within the 90 days and that the actual amount can be determined later:

> A sentencing court that misses the 90–day deadline nonetheless retains the power to order restitution—at least where, as here, that court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount.

*Dolan v. United State*s, 560 U.S. 605 (2010). Johnson recognizes the application of *Dolan*, but argues it is distinguishable because "the Court's statements regarding restitution [in this case] did not state with sufficient clarity that Mr. Johnson would have to pay restitution." Dkt. 152, at 3. Johnson outlines various statements made by the Court during sentencing and concludes it is not clear the Court intended to order restitution.

Candidly, the Court agrees that it did not use the words "you are hereby ordered to pay restitution and the amount will be determined later." But the Court did not need to. It only needed to make clear that it "*would* order restitution." This distinction, while subtle, is critical to the Court's analysis of this issue. It appears Johnson's interpretation of *Dolan* requires the Court to actually order restitution prior to the expiration of the 90 days holding

---

[1] The District of Idaho issued several General Orders addressing the operations of the courts between March 17, 2020 (GO 360), and March 17, 2021 (GO 391). Those general orders precluded evidentiary hearings for most of that timeframe. Only "essential hearings" as determined by the presiding judge could be heard. The court does not deem restitution hearings to be essential hearings.

open only the amount. This is not an incorrect reading of the final line of the *Dolan* quote above. However, the prior line is also important. The phrase "the Court made clear . . . that it *would* order" is prospective; it is in the future. The Court does not need to actually order restitution prior to the 90-day expiration; it must simply make clear that it *will* order restitution—again, at some future point.[2] *United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1163 (9th Cir. 2010) ("the district court's statements regarding restitution made clear to the parties, before the deadline expired, that it would order restitution; accordingly, the court retained the power to order restitution") (cleaned up). *See also, United States v. Pickett*, 612 F.3d 147, 149 (2d Cir. 2010) (per curiam) (holding that the District Court's statements about restitution at the sentencing hearing, "each of which was made before the expiration of the ninety-day period, left no doubt that restitution would be imposed . . ." and did not divest the Court of its authority to order restitution after the 90-day period had expired).

To be sure, formally ordering restitution at sentencing (and indicating the only remaining issue is the actual amount) would avoid any doubt on the matter. However, not specifically articulating the above—but only indicating the Court "would order" restitution in the future—does not deprive the Court of its authority to order restitution.

Semantics aside, the Court agrees with Johnson that the relevant question is whether the Court was "sufficiently clear" that it would be ordering restitution in this case. A close reading of the colloquy from the sentencing hearing illustrates the Court always intended to order restitution as part of Johnson's sentence.

---

[2] The Court notes that 18 U.S.C. § 3664(d)(5) likewise does not mandate a formal order, only that "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

At the outset of the hearing, the Court sua sponte brought up its concern that Johnson may have violated its prior order freezing his assets by instructing a friend to sell one of his vehicles. The Court then stated its preference to have a show cause hearing on this matter "the same date as any restitution hearing." Dkt. 139, at 2. When Johnson asked to address the Court on that topic, the Court stated that it was "not going to address it today. I'm just bringing it up. When we have a restitution hearing, that's when I'll address it, and that's when you can explain it to me." *Id.* at 3. The Court then pointed out its specific concern (regarding the sale/transfer of a vehicle) and stated again that, "at the restitution hearing, you're going to have to give me evidence of when the vehicle was transferred or testimony, whatever." *Id.*

Later, when reviewing Johnson's objection to a fine, the Court indicated that it would "decide all of that at the restitution and contempt hearing." *Id.* at 17. Then during the imposition of Johnson's sentence, the Court reiterated that "any fine is going to be taken under advisement at this time. It will be resolved at the time of the hearing on restitution." *Id.* at 43.

Next, when discussing the various sentencing factors, the Court noted it had "looked at the need to provide restitution to any victims, although I took that need under advisement and will deal with that later." *Id*. at 40. After apprising Johnson of his appeal rights, the Court finished imposing Johnson's sentence by saying: "I will reserve for approximately 90 days, depending on what the calendar falls out, a hearing on restitution, a hearing on the order to show cause, and a hearing on any fine that will be imposed." *Id*. at 45.

Then, upon a final question by the government related to the disposition of property, the Court reminded Johnson that "everything remains frozen until we have the hearing on restitution." *Id.* at 46.[3]

In sum, the Court refenced a future restitution hearing eight times during the sentencing hearing. Therefore, it is clear the Court "would order restitution" at a future hearing. The Court finds that it has the authority to order restitution in this case even though the restitution hearing fell outside of the 90-days because, in accordance with *Dolan*, the Court made clear restitution would be ordered.[4]

## B. Restitution

Pursuant to 18 U.S.C. § 2259, restitution is mandatory in this case because Johnson was convicted of production of child pornography. *See* 18 U.S.C. §§ 2259(a) ("[T]he court *shall* order restitution for any offense under this chapter." (emphasis added)); 2259(b)(4)(A) ("The issuance of a restitution order under this section is *mandatory*.")

---

[3] Also, the Court's minute entry for the hearing noted that the fine would be "taken up at the time of the restitution hearing to be set at a later date and time," that restitution would be payable to the Court in Boise "the amount [of which] to be deferred to a later hearing," and that "a hearing to address the issue of restitution . . . will be set for a later date and time." Dkt. 125, at 1, 4. Johnson argues the minutes are a summary of the hearing and "do not constitute the official record." Dkt. 152, at 6. Even assuming the minutes are "unofficial," these three additional references support the Court's finding that Johnson was squarely on notice that restitution would be ordered in his case.

[4] Johnson also takes issue with the Court leaving the box related to restitution blank in the judgment (Dkt. 126, at 3) as well as the entire monetary penalties portion (*Id.* at 7). This is true; the Court did leave the restitution box blank. It left the fine box blank as well. Consistent with its explanation at sentencing that both the amount of restitution and the amount of any fine would be determined at a later date, the Court left both boxes blank and indicated the matters were "deferred." *Id.* The Court's choice to not check the restitution and fine boxes was by design, in accordance with its statements on the record at sentencing, and to avoid confusion. To be sure, it appears *not* checking the boxes caused confusion in this case. Regardless, not checking these boxes does not equate to the Court waving its right to award restitution. The Ninth Circuit has flatly rejected this argument. *See United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1163 (9th Cir. 2010).

(emphasis added). While recognizing this, Johnson states the Government still must meet its burden, argues that it has not, and asks the Court to deny the request. He does so for two primary reasons. First, Johnson argues there is no need to award restitution because A.B. has not actually said she wants to participate in treatment. Second, Johnson argues the Government has not proven he proximately caused the harm to A.B. for which she seeks counseling. The Court will first review the Government's submissions and testimony and then address Johnson's counterarguments.

The Government argues the eight-year-old victim of Johnson's child-pornography production and possession in this case, A.B., is entitled to restitution for her losses, including the cost of future counseling. Because she was the victim in counts one through three of the indictment, she was directly harmed as a result of Johnson's criminal conduct and is entitled to restitution. Based on the estimates provided by A.B.'s counselor and another counselor who specializes in the treatment of childhood sexual trauma, the Government estimates A.B.'s cost of future counseling to be approximately $15,300.

In reaching this total, the Government consulted with Dr. Marsha Hedrick, a forensic psychologist who specializes in childhood sexual abuse matters. *See* Dkt. 142-1, at 1. Dr. Hedrick reviewed the investigative materials in this case, including the recorded CARES interview of A.B., relevant investigative reports, and relevant trial transcripts. *See id.* Dr. Hedrick also reviewed written summaries of A.B.'s behavior from her mother and counselor detailing A.B.'s performance since the sexual exploitation. *See id.* Based on her review of these materials, Dr. Hedrick concluded that "[t]he behaviors described by the mother and treatment issues described by the therapist are consistent with a child who is

experiencing significant behavioral and emotional difficulties in the aftermath of sexual exploitation." *Id*. at 3.

For treatment, A.B. has attended approximately 13 counseling appointments (in person) in Twin Falls, Idaho, since beginning treatment in February 2019. *See* Dkt. 142-2, at 1. These sessions, however, have been intermittent because A.B.'s family has limited means of transportation. In total, 31 counseling appointments have been scheduled for A.B.; 17 appointments have been missed due to transportation and financial difficulties.

Dr. Hedrick notes that this type of inconsistent treatment can actually "do more harm than good." Dkt. 142-1, at 3. In light of the hurdles to consistent treatment going forward, Dr. Hedrick recommends that A.B. receive a short-term, intensive treatment therapy for trauma. Dkt. 142-1, at 3–4. This model, Dr. Hedrick continued, would be a "more effective model treatment." *Id*.

The model proposed by Dr. Hedrick would include a California specialist—Dr. Rebecca Bailey—traveling to Boise, Idaho, for one week to work with A.B. and her parents to address A.B.'s "issues and how best to manage those issues." *Id*. at 3. Instead of inconsistent, intermittent treatment, therefore, A.B. would receive a "comprehensive, consistent, and focused approach" that would "allow a child victim a better opportunity to develop a trusting relationship with the therapist that will sustain over the long term." *Id*.

This week-long program, plus follow-up appointments, would cost $12,500. *Id*. at 4. This treatment would likewise require A.B. and her family to travel to Boise, Idaho, for one week. Costs associated with this travel would include car rental and hotel, totaling approximately $100 per day. *See id*.

Finally, Dr. Hedrick notes that children like A.B. frequently need future counseling when they reach significant developmental milestones, such as becoming sexually active or having children of their own and estimates a total of ten such future sessions, at a cost of $2,000 total. All told, Dr. Hedrick estimates $15,300 is necessary for A.B.'s treatment and that is what the Government seeks in restitution.

Dr. Hedrick testified at the hearing and summarized the above analyses and findings.

As noted, Johnson asks the Court to deny the motion for two reasons: first, because A.B. does not appear to currently want treatment; and second, because his actions were not the proximate cause of A.B.'s trauma. While Johnson's two arguments are not wholly without merit, neither is persuasive.

First, as noted, restitution in this case is mandatory. *United States v. Kennedy*, 643 F.3d 1251, 1260 (9th Cir. 2011) ("Section 2259 makes restitution mandatory for offenses involving sexual exploitation and other abuse of children.").The fact that A.B. might not want counseling at this moment is, therefore, of marginal relevance to whether the Court should award restitution. While this factor may affect the *amount* of restitution, it does not affect the *imposition* of restitution in the first instance. Again, such is mandatory.

Johnson argues, however, that the Government has not sufficiently shown A.B. will even require counseling in the future. The Court agrees the Government cannot guarantee A.B. will follow through with treatment, but such is not necessary. The Court's duty is to estimate "any costs incurred, or that are *reasonably projected* to be incurred in the future." 18 U.S.C. § 2259(b)(2)(A) (emphasis added). *See also, United States v. Baroun*, 457 F.

App'x 628, 630 (9th Cir. 2011) (noting that the Court must calculate "losses of the victim that can be calculated with some *reasonable certainty*.") (cleaned up) (emphasis added).

The victim in this case was a minor at the time of the events in question (and still is a minor today). That she may not recognize or want treatment *now* is arguably only relevant to the Court's first task: costs *previously* incurred. The Court's second duty, however, is to estimate reasonable *future* costs. The very nature of these costs is speculative. Quite frankly, the Court never knows if any victim it has awarded costs to engages in treatment and/or whether that treatment turns out to be shorter in duration (and, therefore, less costly) or longer (and more costly) than what was ordered. However, this does not absolve the Court of its overarching responsibility.[5]

Here, it is more than reasonable to conclude that future costs will be necessary for A.B. The Government's expert has recommended as much. And while it might not be a sure conclusion, the Court has reviewed the information in the record, finds that the Government has met its burden, and finds that it is *reasonable* to conclude these future costs will occur. *See United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999) (recognizing that "Section 2259 is phrased in generous terms[] in order to compensate the victims of

---

[5] As the Supreme Court has noted:

> At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment. But that is neither unusual nor novel, either in the wider context of criminal sentencing or in the more specific domain of restitution. It is well recognized that district courts by necessity "exercise . . . discretion in fashioning a restitution order." § 3664(a).

*Paroline*, 572 U.S. at 459.

sexual abuse for the care required to address the long term effects of their abuse" and affirming the District Court's award of future counseling costs even though those amounts were only estimates).

Second, Johnson argues the Government has not sufficient connected his conduct to A.B.'s trauma. Somewhat similar to the above analysis, the fact that A.B. has other stressors in her life that may warrant counseling does not change the fact that the losses the Court is duty-bound to estimate are for the offenses Johnson was found guilty of committing against A.B. Said differently, even if there are other things that A.B. needs counseling for, the Court's duty is simply to examine whether Johnson's actions were the proximate cause of the losses for which the Government seeks restitution.[6] Johnson points to various factors and argues A.B. might be going to counseling for those things and not as a result of his conduct. Even if this were the case, the counseling estimates the Government has put forth—that account for past and future costs—are reasonably based upon *his conduct* and their expert's opinion on how best to aid A.B. in her recovery.

Johnson also tries to shift the blame arguing that A.B. would not have even known about his crime had her mother not told her about it. This argument is immaterial. It is hard to imagine A.B. would never have become aware of the circumstances surrounding this

---

[6] Again, this is a fine line, but a critical one. The Court is not concerned with *why* a person needs counseling but with whether the costs sought can be fairly traced to a defendant's conduct. Now, the above must be read in context. The Court obviously must concern itself with why a person wants counseling; after all, it only awards restitution for treatment that is necessary as a result a defendant's conduct. But it goes without saying that the Court will never know if a person focuses their treatment on a defendant's conduct or if other matters arise that warrant treatment as well. But this unknown is precisely the Court's point. Because it will not (and cannot) know the substance of any counseling sessions (or if a person has other contributing stressors), it can only determine what it can reasonably approximate as it relates to a particular defendant's conduct. In this case, it goes without saying that Johnson's actions in this case are the type that would cause a minor victim trauma.

criminal investigation and federal case, but the fact of the matter is, she *is* aware of them now and the trauma requiring attention stems from Johnson's actions, not her mother telling her or those actions.

In like manner, the fact that a prior counseling report noted an abusive history in the family by a "different offender," (i.e. not Johnson) does not absolve Johnson of responsibility *in the current matters*. Johnson claims there is an open question as to whether he caused the trauma A.B. is experiencing now or if it was this unknown offender. In light of this open question, Johnson argues the Government has not met its burden showing he is the cause of A.B.'s distress and any necessary counseling. Again, the Government's burden is not one of absolutes, but of approximation. It must prove the amounts it has requested by a preponderance of the evidence. This is a "more likely than not" standard. Here, while there may be unanswered questions about the trauma A.B. has experienced in her life, it is clear the losses sought by the Government are directly tied to Johnson's conduct and the past and future costs are a "proximate result of the offenses involving the victim." 18 U.S.C. § 2259(c)(2). *See also Paroline*, 572 U.S. at 459 ("[C]ourts can only do their best to apply the statute as written in a workable manner . . . .").

In sum, the Court finds Johnson's arguments unpersuasive. The Government's evidence is not iron-clad, but it need not be. When taking into account all the relevant factors, the Court finds restitution is appropriate in this case. In its discretion, the Court awards A.B. $15,300 in restitution.

Lastly, under 18 U.S.C. § 3664(f)(3)(A), the Court's restitution order "may direct the defendant to make a single, lump-sum payment [or] partial payments at specified

intervals." In this case, the Court will order restitution be paid in one lump sum.

First, it is presumed that any fine or monetary penalty imposed is due immediately *unless*, in the interest of justice, the Court allows payment on a particular schedule. The Court typically does allow for a payment schedule when the defendant has shown, by affidavit of otherwise, that he or she cannot pay the required sum. In this case, however, Johnson refused to comply with 18 U.S.C. § 3664(d)(3) and file an affidavit outlining his financial resources. Absent such a document, the Court has no reason to allow payment on an intermittent schedule. Second, Johnson has consistently failed to follow the Court's orders when it comes to his assets and the disposition of those assets. The Court has little faith that Johnson will pay this restitution ordered willingly. Thus, it is the Court's intention to use some of the previously seized assets (or seized funds) to effectuate restitution.

## V. ORDER

1. The Government's request for restitution is GRANTED.

2. A.B. is awarded $15,300 in restitution. This amount is due and payable immediately.

3. The Court will enter an amended Judgment forthwith.

DATED: May 14, 2021

David C. Nye
Chief U.S. District Court Judge