UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SETH ANTHONY JOHNSON, | Case No. 1:23-cv-00374-DCN |
| Petitioner, | 1:18-cr-00214-DCN |
| v. | **MEMORANDUM DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## I. INTRODUCTION

Before the Court is Petitioner Seth Johnson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). Dkt. 1; CR-214, Dkt. 189.[1] The Government opposed Johnson's Petition. Dkt. 18. Johnson did not reply.

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, the Court will decide the Petition on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES Johnson's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

---

[1] In this Order, "CR-214" is used when citing to the criminal record in Case No. 1:18-cr-00214-DCN; all other docket citations are to the instant civil case.

## II. BACKGROUND

### A. Factual Background

The background of the underlying criminal case is known to all parties, has been outlined in prior decisions, and is incorporated here by reference. Briefly though, on July 7, 2018, a federal grand jury returned an indictment against Johnson. CR-214, Dkt. 1. The underlying facts of the case are simple: Johnson took six illicit photographs of his ex-girlfriend's eight-year-old daughter, A.B., and these photographs were discovered on his phone by a probation officer.[2] The images were of A.B.'s genital area without clothing.

On October 18, 2019—after a three-day trial—a jury returned a guilty verdict on all three counts set forth in the indictment—production of child pornography (count one), possession of child pornography (count two), and production of child pornography while a registered sex offender (count three). CR-214, Dkt. 91.

The Court ultimately sentenced Johnson to 720 months' imprisonment. CR-214, Dkt. 126.[3] Johnson appealed. CR-214, Dkt. 128. The Ninth Circuit affirmed both Johnson's conviction and sentence. CR-214, Dkt. 183. Johnson is currently incarcerated in Arizona and has an anticipated release date of 2069.

---

[2] Johnson was on federal supervised release for a felon-in-possession of a firearm conviction he had received in 2010. At the time of his 2010 conviction, Johnson was a registered sex offender due to his conviction for the rape of a fourteen-year-old in 2007. His federal supervised release terms thus included sex-offender conditions that provided for suspicionless searches and the monitoring of his use of digital media. Additionally, Johnson was precluded from any unsupervised contact with minors. After allegations of unapproved contact with underage girls arose, the Court issued an arrest warrant. The searches of Johnson's phone conducted pursuant to that investigation are what led to the discovery of the pornographic images underlying the charges of conviction in the instance case.

[3] After the Court imposed sentence, issues arose as to restitution, the disposition of assets, and contempt. The Court held multiple hearings on these issues, but none are germane to Johnson's Petition today. Notably, the Ninth Circuit affirmed how the Court handled those matters. CR-214, Dkt. 183, at 5–6.

## B. Procedural Background

Johnson originally filed a § 2255 Petition on February 18, 2021. CR-214, Dkt. 147. That filing triggered the opening of a civil case. Case No. 1:21-cv-00065-DCN. The problem, however, was that Johnson's appeal was still ongoing at that time. Accordingly, on the Government's Motion, the Court dismissed that Petition as premature. Case No. 1:21-cv-00065-DCN, Dkt. 4. The Court explained that Johnson could refile a petition at the appropriate time. *Id*. at 2.

On August 18, 2023, Johnson filed the instant Petition. Dkt. 1. This filing is timely and procedurally proper.

Johnson raises three claims in his Petition: first, he asserts his counsel was constitutionally deficient, citing several alleged errors during the investigation, trial, and on appeal; second, he claims that newfound evidence establishes his innocence of the crimes charged; and, finally, he argues the Government engaged in deceitful practices by failing to disclose information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and affirmatively misrepresenting facts during trial.

Shortly after filing his Petition, Johnson filed a Motion to Appoint Counsel. Dkt. 2. He then supplemented his Petition. Dkt. 4. Johnson also had various "friends" file materials on his behalf. *See* Dkt. 7, 13. The Court subsequently denied Johnson's Motion to Appoint Counsel. Dkt. 12.

Johnson also waived attorney-client privilege (Dkt. 5), and the Government was able to obtain a declaration from Johnson's prior attorney—Thomas Monaghan— regarding the allegations raised in the Petition. Dkt. 16.

The Government responded to Johnson's Petition. Dkt. 18. Johnson never filed any

reply, and the time to do so has long since passed.[4] The matter is, therefore, ripe for review.

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, there are four grounds under which a federal court

may grant relief to a prisoner who challenges the imposition or length of his incarceration:

that (1) "the sentence was imposed in violation of the Constitution or laws of the United

States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence

was in excess of the maximum authorized by law;" or (4) "the sentence is otherwise subject

to collateral attack[.]" 28 U.S.C. § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a

denial or infringement of the constitutional rights of the prisoner as to render the judgment

vulnerable to collateral attack." 28 U.S.C. § 2255(b). Further, "a district court must grant

a hearing to determine the validity of a petition brought under that section '[u]nless the

motions and the files and records of the case *conclusively show* that the prisoner is entitled

to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in

original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing,

"[t]he standard essentially is whether the movant has made specific factual allegations that,

if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d

1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record

---

[4] Johnson's reply was due on April 26, 2024, roughly 13 months ago. *See* Dkt. 17.

"only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). In a § 2255 motion, conclusory statements are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## IV. ANALYSIS

The Court is in a unique position, having presided over this case from its inception. It issued pre-trial rulings, presided over the jury trial, and handled all matters post-trial— including restitution and contempt. The Court mentions this because some of the issues Johnson raises in his Petition have been addressed in prior decisions or are otherwise well-known to the Court.

The Court turns to Johnson's allegations.

### A. Ineffective Assistance of Counsel

Johnson first claims his counsel provided ineffective assistance during this case. Johnson highlights five instances he believes illustrate how Monaghan's representation was deficient. The Court will address each allegation in turn. None prevail.

As the United States Supreme Court has noted, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131

S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[5]

To successfully claim ineffective assistance of counsel, Johnson must satisfy the two-part *Strickland* test. Johnson must show that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000) (citing *Strickland*, 466 U.S. at 687).

To satisfy the first prong related to deficiency of counsel, "a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 363; *see also Strickland*, 466 U.S. at 688. To do so, Petitioners must show "gross incompetence" on the part of their attorneys. *Kimmelman v. Morrison*, 477 U.S. 365, 366–67 (1986). There is a strong presumption that legal counsel's conduct falls within the range of sound trial strategy. *Strickland*, 466 U.S. at 669.

Second, a petitioner must show he was prejudiced by his counsel's errors and that "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman*, 477 U.S. at 375.

    *1. Failure to Investigate and Present Evidence that A.B.'s Father Framed Johnson*

Johnson begins by alleging Monaghan failed to properly investigate his assertion that the victim's father, J.B., planted the illicit photographs on his phone, and further, that Monaghan failed to present this defense at trial.

As for the investigation piece, this allegation is patently false. As Monaghan

---

[5] In applying that presumption, a court must try "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

outlines in his affidavit, he hired three investigators to explore various defenses in this case. Dkt. 16, at 11. And specifically, Monaghan directed one of the investigators—Stuart Robinson—to contact A.B.'s parents (including J.B.) and interview them. *Id*. at 11–12. A.B.'s parents, however, refused to speak with Robinson. Thus, contrary to Johnson's claim, Monaghan did try to interview J.B. and investigate this potential defense.[6]

Regarding trial, the analysis is likewise straightforward. Monaghan advanced arguments at trial that someone other than Johnson took the illicit photographs. From his opening statements (CR-214, Dkt. at 95, at 50–51), to cross-examination (*Id*. at 173–74; 189–90), to direct testimony (CR-214, Dkt. 96, at 57–58, 65–66, 79), and closing argument (CR-214, Dkt. 97, at 37), Monaghan presented testimony and evidence to support Johnson's theory. Now, it is true that these arguments were more general in nature and did not *specifically* call out J.B. as the potential perpetrator.[7] But the fact remains there was no evidence connecting J.B. to Johnson's phone or the illicit images. *See* Dkt. 16, at 12–14 (Monaghan explaining that, after a thorough investigation, he did not feel he could direct attention to J.B. without any proof and without alienating the jury). Thus, for Monaghan to imply someone else took the pictures, but omit a targeted reference to J.B., was entirely reasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (emphasizing that "[C]ounsel has wide latitude in deciding how to best represent a client . . . .").

---

[6] Monaghan also tried to subpoena records related to past instances of abuse A.B. suffered. Specifically, Monaghan wanted to see if the "offender was someone in the home." CR-214, Dkt. 75, at 4. The Court ultimately denied the Motion. Dkt. 80. But again, it is clear Monaghan was investigating Johnson's claim that someone else—specifically J.B.—was to blame for the illicit photographs found on his phone.

[7] Even then, Johnson himself testified about his tense relationship with J.B., how J.B. wanted to kill him, and how he and J.B. had numerous verbal fights. CR-214, Dkt. 96, at 58–64.

Under the circumstances, the Court cannot find that Monaghan's representation in this regard was substantially unreasonable. Focusing on J.B. as a defense does not appear to be supported by the facts, and Monaghan's navigation of the issue was proper.[8] What's more, there is no indication that Monaghan's conduct—even if it could be considered deficient—caused Johnson any prejudice or that the jury's verdict would have been any different *but for* the correction of this "error." For these reasons the Court finds the *Strickland* factors have not been met. This claim is dismissed.

### 2.  *Failure to Hire and Utilize a Forensic Expert*

Johnson next alleges Monaghan was ineffective because he failed to employ an expert to examine forensic cellphone data. Again, this allegation is demonstrably false.

Monaghan hired a digital forensics expert—Wayne Josleyn—to examine Johnson's cellphone. Not only did Josleyn examine the cellphone seized in 2017 that contained the child pornography at the center of this case, but he examined the cellphone extraction from a cellphone seized in 2013.[9] Monaghan affirms that Josleyn's examination did not yield anything different than what the Government's experts had discovered and disclosed and, as a result, there was no need to call him as a witness at trial. Dkt. 16, at 16–17. Monaghan's strategic decisions here were reasonable and does not rise to the level of ineffective

---

[8] Setting aside the lack of actual evidence to support this theory, the Court notes the rather outlandish concept Monaghan would have had to put in front of the jury: that J.B. had committed a serious sex offense against his own minor daughter, placed images of her genitals on a sex offender's cellphone, and hoped that somehow, somewhere, someday those photographs would be discovered. This theory strains credulity.

[9] This prior cellphone—specifically certain erotic child images found thereon—was the subject of a pre-trial Motion in Limine and ultimately played a small role at trial. The Ninth Circuit affirmed the Court's rulings as related to those matters. CR-214, Dkt. 183, at 4

assistance of Counsel. This claim lacks merit and fails the *Strickland* test. It is dismissed.

### 3. Failure to Prepare for Trial

Next, Johnson alleges that Monaghan was inadequately prepared for trial. He asserts that while Monaghan was initially very invested in this case, his personal life and problems took over and he was ill-prepared for trial. He asserts Monaghan should have called more witnesses, made different arguments, and presented other theories of the case.

It goes without saying that an attorney could have (presumably) presented more or different evidence. But as the old saying goes, "hindsight is always 20/20." To allege that Monaghan's trial strategy could have been better, or opine on what might have been but for some alternative theory, is pure speculation. Johnson has not presented any concrete evidence illustrating that Monaghan was not prepared for trial. And Monaghan disputes this characterization of his representation. Dkt. 16, at 8–10. He outlines the numerous times he met with Johnson and the extensive efforts he made to diligently defend this case.

The Court can also attest that Monaghan was a zealous advocate. He filed numerous motions—before, during, and after trial—and represented Johnson well through all the proceedings. The Court did not detect any deficient preparation, and Johnson points to none. His suppositions of what might have been are not enough. This claim is dismissed.

### 4. Failure to Object to Prosecutorial Misconduct

Johnson next argues that Monaghan failed to object to what he calls "prosecutorial misconduct" that occurred during trial. Setting aside the "conspiracy" elements of this

claim,[10] Johnson generally argues Monaghan should have more forcefully objected to the Government's strategy, presentation of evidence, and arguments at trial. Like the Court's observations above, Johnson cannot simply call into question Monaghan's performance because he was ultimately convicted. He must allege specific failures that prejudiced him. He has not done so here. This claim is summarily dismissed.

### 5. Failure to Accurately Frame Johnson's Appeal

Finally, Johnson claims that Monaghan was ineffective because he argued an incorrect rule of evidence and incorrect legal standard on appeal and that, had he argued differently, the appeal would have been successful.

Specifically, Johnson claims the Court incorrectly admitted evidence of a prior rape under Federal Rule of Evidence 404(a), not Rule 414, and so Monaghan should have appealed with Rule 404(a) in mind. As Monaghan and the Government both recognize, the Court's reference to 404(a) was simply a misstatement. The Court was talking about various rules, convictions, timelines, and ages of victims and mistakenly said "404(a)" when it should have said "414." *See* CR-214, Dkt. 95, at 208 (discussing Federal Rule of Evidence 404(a), 404(b), 414). As made clear from the context of the discussion, written pleadings, the Court's order, and everything else in the record, it is clear the Court allowed that evidence to be presented at trial *under Rule 414*. Additionally, on appeal, the Ninth Circuit confirmed the Court properly admitted the evidence in question *under Rule 414*.

---

[10] Johnson alleges the Government was so blinded by a desire to convict him that it became an "unwitting all[y] of the actual predator in this case, J.B.," and that evidence supporting the idea that J.B. was the perpetrator was "purposefully suppressed." Dkt. 1-1, at 53–54. As explained above, there is no evidence to support this theory.

MEMORANDUM DECISION AND ORDER - 10

CR-214, Dkt. 183, at 4. That Monaghan did not, therefore, argue a different rule on appeal is completely understandable. This assertion fails the *Strickland* test and is dismissed.

      *6. Conclusion*

Monaghan's performance was not deficient in any way. He provided Johnson with adequate representation though all phases of this case. Johnson has not persuasively called any of his strategic choices into question. Johnson has not shown—pursuant to *Strickland*—that any of Monaghan's actions, in combination or standing alone, amounted to ineffective assistance of counsel. His entire claim in this regard is dismissed.

## B. Newfound Evidence

In his second claim, Johnson asserts that new evidence proves he is innocent of the charges. In support, Johnson supplies the Court with a report he solicited from a fellow inmate. This individual concludes that Johnson could not have taken a photograph of his face (the "selfie") that was time-stamped roughly 40 seconds before the pornographic images were taken. For context, some background is helpful.

As already explained, throughout this case Johnson has maintained he did not take the illicit photographs and that someone else took them and is framing him. One of the ways the Government proved that it was, in fact, Johnson who took the photographs was by showing a selfie of Johnson's face time-stamped just 40 seconds before the illicit images were taken.[11]

Johnson has submitted a declaration from a fellow inmate—William Hooper—who

---

[11] The idea being that Johnson was "testing" his camera or otherwise configuring it before he took the images of A.B.

purports to have extensive experience in engineering and photogrammetric analysis. Dkt. 1-2, at 2. Despite having not seen the actual photograph (or the cellphone or anything else), Hooper is of the opinion that, based upon the angle and frame of the image, Johnson could not have taken the photograph himself because his arm is too short. The implication here is, again, that someone else took the selfie to frame Johnson.

This second claim suffers from two problems: one procedural and one substantive.

*1. Procedural Default*

To begin, collateral review may not "'do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)). Thus, the procedural default doctrine bars consideration of claims the movant omitted to raise appropriately on appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996); see also *Berry*, 624 F.3d at 1038 (holding "§ 2255 may not be used as a chance at a second appeal").

Courts may adjudicate the merits of otherwise defaulted claims in two instances. First, they may consider such claims when a movant demonstrates "he was 'actually innocent' of . . . the crime for which he was indicted." *United States v. Guess*, 203 F.3d 1143, 1145 (9th Cir. 2000) (citing *Bousley*, 523 U.S. at 622). Second, courts may consider defaulted claims if the petitioner establishes cause and prejudice. *Guess*, 203 F.3d at 1145. To demonstrate cause, a movant must show that "some objective factor external to the defense" impeded compliance with a procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Skurdal*, 341 F.3d 921, 925 (9th Cir. 2003).

MEMORANDUM DECISION AND ORDER - 12

Johnson did not raise any claims of newly discovered evidence on appeal. Thus, the Court can only consider this argument if one of the above exceptions—actual innocence or prejudice—applies.

Here, Hooper's statements about the selfie do not rise to the "extraordinarily high" level of proof illustrating actual innocence contemplated by the Supreme Court. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Even assuming the Court took Hooper's statement as scientifically sound—which it does not—at *most*, doing so would cast doubt on whether Johnson took the image himself. But it would not change the myriad other facts that supported the jury's verdict in this case.[12]

Second, Johnson has not persuasively explained any prejudice or highlighted an "objective factor" that prevented him from bringing this evidence up previously. As noted, Johnson has repeatedly argued that he did not take the illicit photographs. He also implied at trial that he did not take the selfie. *See* CR-214, Dkt. 96, at 72, 79; Dkt. 97, at 37.  Now, Johnson might not have used the "short arm" theory he is advancing now, but nonetheless he casted doubt on whether the selfie was authentic and whether someone else had taken it. In sum, he could have developed this theory more at trial (or on appeal) but because he failed to do so—and because the selfie does not bear on Johnson's actual innocence—the Court finds this claim is procedurally barred.

---

[12] Arguably, Johnson could have tried to use this evidence to request a new trial. But the time to file a motion for a new trial has long since run. Federal Rule of Criminal Procedure 33(b)(1) outlines that a motion for a new trial based on newly discovered evidence must be filed within three years of the guilty verdict. The verdict in this case was entered on October 18, 2019. CR-214, Dkt. 93. Thus, Johnson would have had to file by October 18, 2022. Even construing his Petition as a motion for new trial, Johnson filed on August 18, 2023—ten months late.

## 2. Substantive Weight

But even if the claim were not procedurally barred, it does not hold water.

As alluded to, Johnson has not persuaded the Court that it should give this new evidence *any* consideration. While it does appear that Hooper has some expertise related to this subject matter—he is an engineer who has testified in Court regarding photogrammetric analyses—the manner of his presentation lacks all the hallmarks of expert testimony. Critically, he did not view the actual photograph at issue here. He based his analysis solely off Johnson's description and recitation of what the photograph showed.[13]

In sum, what little evidentiary value the Court could give to this testimony is severely undercut by the weight of all the other evidence establishing Johnson's guilt.[14]

For these reasons the Court finds this claim fails on the merits as well.

## C. Government Violations

Third and finally, Johnson claims the Government intentionally withheld *Brady* material and engaged in a pattern of presenting false evidence at trial.

To begin, as with his second claim, Johnson could have raised this argument on appeal. He did not. Accordingly, he has procedurally defaulted on this claim and the issue cannot be raised at this juncture. *See Frady,* 456 U.S. at 165.

---

[13] Again, the absurdity of the argument cannot be overlooked. Johnson is claiming someone surreptitiously took a photo of him at extremely close range, that he had no idea, and that within 40 seconds, that same person (or another person) was taking illicit photographs of A.B. The more likely explanation is, of course, that Johnson took all the photographs.

[14] To reiterate, the selfie was but *one* way in which the Government showed that Johnson was the perpetrator. Other extemporaneous evidence was admitted at trial as well as Johnson's past convictions and pattern of behavior. Thus, the photograph was but one piece of evidence among many others.

In addition to default, this claim is meritless. Johnson asserts the Government engaged in misconduct in three primary ways by: (1) misrepresenting evidence regarding the prior rape of another individual admitted under Rule 404(b); (2) misrepresenting evidence during trial by referring to a "top" as a "bra"; and (3) altering the six images of child pornography. Additionally, Johnson claims the Government withheld evidence related to J.B. in violation of *Brady*.

First, the Court ruled evidence of the prior rape was admissible under Federal Rule of Evidence 404(b) and 414. The Government stayed within the bounds the Court set for this evidence.[15] There was no misconduct.

Second, how a piece of clothing was referenced during trial—as a "bra" instead of a "top"—was not prejudicial to Johnson, let alone could it constitute misconduct by the Government. Although he preferred to call it a "top" or "spaghetti top half," Johnson admitted it could be called a "bra" during his testimony. CR-214, Dkt. 96, at 75.

Third, relying only on his own affidavit, Johnson argues that "prosecutors knowingly altered the six explicit images that form the basis of Mr. Johnson's charge, making the photos appear even more explicit than they already were." Dkt. 1-1, at 64. The record proves otherwise. The images underpinning the charges were examined by the Government's forensic expert, as well as a defense forensic expert—both of whom confirmed the images were unaltered and accurate.

---

[15] Johnson also claims the Government mislead the Court regarding how Rule 414 should apply to that situation because the victim was fourteen years old. The Court made the ruling it did at trial fully understanding the legal arguments and applicable caselaw. CR-215, Dkt. 95, at 208. The Government did not mislead the Court. As noted, the Court's ruling was affirmed by the Circuit. CR-214, Dkt. 183, at 4.

MEMORANDUM DECISION AND ORDER - 15

Finally, Johnson repeats his argument that J.B. was the real culprit in this case, and the Government did not disclose evidence that supported this theory in violation of *Brady*. The Government has represented it provided all relevant evidence *including* an interview federal agents conducted with J.B. in which J.B. makes threatening statements about Johnson. Dkt. 18-1. What's more, as outlined above, Johnson was able to present evidence at trial concerning J.B. CR-214, Dkt. 96, at 58–64. There is no basis for this argument.

The Court finds Johnson has not shown the Government engaged in any nefarious conduct, violated *Brady*, or otherwise erred in the prosecution of this case. This claim is dismissed.

## V. CERTIFICATE OF APPEALABILITY

A defendant cannot appeal a final order on a § 2255 motion unless the district court or court of appeals issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) (providing that appeal cannot proceed unless "circuit justice or judge issues a certificate of appealability"); *U.S. v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The court should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to show that "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

To promote efficiency, the district court is required to issue or deny a COA in the same order denying the defendant's § 2255 motion. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. If the district court denies the COA, the court should state the reason

for its decision. *Aznar*, 116 F.3d at 1270. The defendant cannot appeal the denial of the COA but can file a notice of appeal and request a COA from the court of appeals pursuant to Federal Rule of Appellate Procedure 22. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. Upon so doing, the district court forwards to the court of appeals the defendant's case file, final order, and notice of appeal. *See Asrar*, 116 F.3d at 1270.

In this case, the Court denies the COA. As explained in the preceding sections, Johnson's claims do not rise to the level warranting any reduction or vacatur of his trial or sentence. No reasonable jurist would disagree with this assessment. Therefore, should Johnson wish to appeal, he must timely file a notice of appeal with this Court and request a COA from the Ninth Circuit.

## VI. CONCLUSION

To this day, Johnson maintains his is innocent and that someone else—by his estimation J.B.—took the illicit photographs. However, there is no evidence in the record to support Johnson's theory. To the contrary, there is ample evidence to support the Government's theory of the case and sustain the jury's verdict of conviction.

As for Johnson's attorney, the Court finds nothing in the record to indicate any deficient performance or prejudice. The bulk of Johnson's Petition is made up of self-serving statements that are either directly contradicted by the record or simply based upon his opinion and supposition of what might have been. But without any facts in support, none of the allegations can sustain a finding of ineffective assistance of counsel.

Regarding Johnson's so-called newly discovery evidence, the Court finds that even assuming the veracity and reliability of his fellow inmate's statement, Johnson has not

carried his burden. That "evidence" does nothing to change the outcome in this case.

Similarly, Johnson's claims of prosecutorial misconduct fall flat without any supporting facts, evidence, or argument.[16]

For all the reasons stated above, the Court finds no reason to vacate or remand Johnson's conviction or sentence. Furthermore, the Court finds it unnecessary to conduct an evidentiary hearing on the same. Thus, the Petition is DENIED.

///

///

## VII. ORDER

**IT IS HEREBY ORDERED:**

1. Johnson's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt. 1; CR-214, Dkt. 189) is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil case.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Johnson is advised that he still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Johnson files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order,

---

[16] And, as the Court explained, in addition to lacking substantive merit, Johnson's second and third claims are procedurally defaulted because Johnson did not raise either on direct appeal.

to the Ninth Circuit Court of Appeals.

DATED: June 27, 2025



David C. Nye
Chief U.S. District Court Judge